## No. 7561.

MRS. A. M. PILCHER VS. NEW YORK LIFE INSURANCE COMPANY. LOUISIANA NATIONAL BANK VS. SAME. CONSOLIDATED.

A policy of insurance taken on the life of the husband in favor of the wife, vests the latter with a right, which the former cannot destroy or control without her consent.

Such a policy belongs to the wife exclusively, and not to the Community of acquets and gains. Previous Decisions affirmed.

Therefore, the insurer, having at the request of the husband and without the consent and knowledge of the wife, substituted to such a policy, one in favor of the husband, will remain liable to the wife on the original policy for the amount thereof, less the sums of premiums paid on the substituted policy.

And the insurer will also be liable to the transferree of the substituted policy, because he is estopped from denying its legal and independent existence, having been instrumental in inducing innocent third persons to give value for it, by issuing it and representing it to the world as an original policy in favor of the husband, and consenting to its transfer.

APPEAL from the Fifth District Court, parish of Orleans. *Rogers, J.*

*Geo. L Bright,* for Mrs. Pilcher, Plaintiff and Appellee.

*Henry C. Miller* and *Branch K. Miller,* for the Louisiana National Bank, Plaintiff and Appellant.

*B. R. Forman, Chamberlain, Carter & Eaton, and D. H. Chamberlain* and *W. B. Hornblower,* for the Insurance Company, Defendant and Appellant.

The opinion of the Court was delivered by

LEVY, J. Mrs. A. M. Pilcher and the Louisiana National Bank instituted separate suits against the New York Life Insurance Company in which each plaintiff seeks to recover of said company the sum of ten thousand dollars, the amount alleged to be due on the policy No. 10,034 issued on the Life of Mason Pilcher. These separate suits were consolidated and tried together in the Fifth District Court of the parish

of Orleans, and there was judgment in favor of Mrs. Pilcher for $8997 05 and against the Louisiana National Bank, dismissing the bank's suit at its costs. The New York Life Insurance Company and the Louisiana National Bank have both appealed. The appellee, Mrs. Pilcher, in her answer to the appeal prays for amendment of the judgment in her favor, and that she be decreed to recover of the New York Life Insurance Company ten thousand dollars, interest and costs.

In her petition, Mrs. Pilcher alleges that in the year 1854 the life of her husband, Mason Pilcher, was insured by the New York Life Insurance Company for her benefit; that a policy, No. 10,034, was issued in her favor for said sum, and the premiums thereon were duly paid to June, 1871, when the said Mason Pilcher and said N. Y. Life Insurance Company agreed between themselves, and without her consent, that the said policy should lapse for the non-payment of a premium, and then made another written instrument, which they called a new policy, bearing the same number as the one issued in 1854, but made in favor of or for the benefit of Mason Pilcher, instead of herself; that all this was concerted by Mason Pilcher, the Insurance Company, and Johnson & Goodrich, merchants in New Orleans, to whom Mr. Pilcher was indebted, in order that the policy might be pledged to said mercantile firm, all which, as above stated, was done. She alleges that this was a device to take her property to secure her husband's debts ; that the policy belonged to her, and could not be destroyed without her consent; that the original policy lives, and is operating notwithstanding, and the death of her husband having taken place, the Insurance Company has become indebted to her in the sum of ten thousand dollars. She made the Insurance Company and the Louisiana National Bank parties to her suits, and prayed for judgment decreeing that the Louisiana National Bank has no right, title or interest in said insurance money; that said Insurance Company be decreed to pay said sum to her. For answer to this petition the Louisiana National Bank set forth that it had acquired the policy of insurance, No. 10,034, issued on 5th July, 1871, by pledge and assignment from the firm of Johnson & Goodrich, in good faith, on the 12th of March, 1874; that said firm had acquired said policy in good faith from Mason Pilcher on the 24th of July, 1871; denied that Mrs. Pilcher had any claim, right, title or interest in said policy; averred that said bank had, since the assignment of 12th March, 1874, paid the sum of $2208 32 in payment of premiums on said policy, and prayed that the Insurance Company be condemned to pay the amount of the policy to the bank; but if the court should decree that the amount of said policy was due to Mrs. Pilcher, the bank should recover, and there should be paid to it out of said policy the sum of $2208 32 premiums paid by it as aforesaid.

The Insurance Company filed exceptions to both these suits on the ground of prematurity and insufficiency, alleged that it was unable to decide to which of the plaintiffs the payment of the policy was due; admitted the execution of the policy for $10,000 on the life of Mason Pilcher, that it held the premium note of the Louisiana National Bank, amounting with interest to $1002 95, which amount it claimed it was entitled to compensate; that deducting this last mentioned sum, there remained a balance due on the policy of $8997 05, which balance it tendered and deposited in court subject to the further orders and decrees of the court, and prayed that it might be discharged of all liability in respect of said policy, and discharged of all costs. The amount thus tendered was by order of the court specially deposited in the Canal Bank in the City of New Orleans, subject to the final judgment of the court.

The evidence discloses the following facts : the policy No. 10,034, issued in 1854 on the life of Mason Pilcher, was for the use of Mrs. Pilcher; in other words, she was named therein and acknowledged and accepted by the company as the beneficiary. In June, 1871, this policy, by agreement between Mason Pilcher and the Insurance Company, was allowed to lapse for the purpose of having a policy issued in its stead, making the heirs or assigns of Mason Pilcher the beneficiaries. This last-mentioned policy was dated the fifth of July, 1871, and was made payable to Mason Pilcher's representatives. This was done without the knowledge or consent of Mrs. Pilcher. The policy dated July 5th, 1871, was assigned on the 24th of July, 1871, by Mason Pilcher to Johnson & Goodrich, on the 23rd of March, 1874, by Johnson & Goodrich to J. H. Oglesby (President of the Louisiana National Bank) and on the 14th of July, 1877, by Oglesby to the Louisiana National Bank, all these assignments were duly notified to the Insurance Company and acknowledged by the company. On the 14th of October, in the year 1878, Mason Pilcher died.

We shall first consider the claim of Mrs. Pilcher to be paid the amount of the policy issued in 1854. We think that the right to the policy vested in Mrs. Pilcher, the wife and beneficiary, and she could not be divested of that right without her consent, by her husband or the insurer, except by failure to comply with the requirements of the policy. We are of opinion, also, that the husband had not the right to dispose of the policy and that it could not be regarded as a community asset. This Court has, in repeated decisions, held these views. In Succession of Kugler, 23 An. 455, the Court said: " We think the right of the widow and children to the policy existed before the death, and that the liability of the Insurance Company became fixed and exigible by the death of the insured." And in 26 An. 326, Succession of Hearing, this

-doctrine is reaffirmed, and also in 27 An, 269, Succession of Clark. In Succession of Bofenschen, 29 An. 714, it was held, substantially, that the proceeds of a policy of life insurance taken out by the husband in favor of his wife, do not become a part of the community, but belong exclusively to her and her heirs. These decisions, considered together, we think, effectually dispose of the question as to the right of the husband to the control of the policy as community property. If on the death of the husband it could not enter into the commu͟ity, but should be treated as the separate and exclusive property of the wife and children, its character must have been the same during his lifetime. If then Mrs. Pilcher had a vested right to the policy for her sole and exclusive benefit, how was she affected by the agreement of her husband and the Insurance Company, whereby it was sought, without her knowledge and consent, virtually, to continue in force the policy issued in her name and for her benefit, but to change the beneficiary therein.

The basis, indeed the 'consideration of the policy of 5th of July, 1871, was the policy of 1854; in the issuance of that in 1871, there was no re-examination of the person whose life was insured, no physician's certificate, no increase of the annual premium regulated by the age of the person insured, although when this new policy, as it is styled, was issued, Mason Pilcher was eighteen years older than when the first policy was taken out. Indeed, it is shown that, with the exception of the change in the date and in the name of the beneficiary, that of July, 1871, is identical with that of 1854. The transfer of the policy of 1871 to Johnson & Goodrich was made in payment of the husband's debts, and it is not contended or shown that its transfer enured to her separate benefit or advantage. The face of the original policy disclosed for whose benefit it had been issued; and the Insurance Company better than any person knew this, and knew also that there had never been any legal transfer of it by her. The pretended lapse of the policy never actually took place; on the expiration of the time within which she or any one for her could pay the annual premium, without giving her an opportunity to avail herself of the benefit of a stipulation agreed to by the company, viz: "If premiums are not paid at maturity, the policy by its terms becomes forfeited, but it may within a reasonable time be renewed at the office with satisfactory evidence of good health," etc., the company with indecent haste issued what is claimed to be as to Mrs. Pilcher a new policy. It was not as to Mrs. Pilcher a new policy, but merely *as to her* a continuation of the original one. The company notwithstanding the alleged failure to pay the premium at maturity, received the amount due therefor within a reasonable time, kept it alive with the same requirements, stipulations and consideration as were contained in the original policy; and it even appears that the premium note

outstanding at the death of the insured was a renewal, a continuation of the premium note on the policy of 1854 accepted from the bank in lieu of Mrs. Pilcher's note.

It appears from the evidence that the annual premiums due on the policy issued in 1854 were paid by or for Mrs. Pilcher for all the years from 1854 to 1870, inclusive, and by Johnson & Goodrich from 1871 to 1873, both inclusive, and from 1874 to 1878, both inclusive, by the Louisiana National Bank. Holding the company responsible and liable to Mrs. Pilcher for the amount of the policy in her favor and for her benefit, we think it just and equitable that the company should compensate their indebtedness to her with the amount of the premiums accrued from the date of the maturity of the premium due for 1871, viz: 17th June, 1871, to the date when the last annual premium became due, i. e. from 1871 to 1878, both inclusive, being eight years.

The first apparent knowledge of these transactions and the first notice to the Insurance Company and demand for recognition of her rights under the policy in her favor, on the part of Mrs. Pilcher, is evidenced by her letter, written conjointly with her husband, to the company, January 8th, 1876, and it is urged that not even then, nor thereafter, did she make any tender of the premiums; and that, therefore, so far as she was concerned, her policy became forfeited. We think such position on the part of the company is not tenable, and should not prevail. It must be borne in mind, that the company itself was a party to the wrong committed against Mrs. Pilcher; it had done all in its power, without her knowledge or consent, to deprive her of a right; it had, by its own act and contract, ignored any faculty on her part to reinstate herself to her rights in the policy; it denied the existence of any policy on which she, or any person for her, could pay the annual premiums, and, therefore, is estopped from complaining that she did not do that which it had itself deprived her of the power of doing. If, upon the notification and demand made in the letter of January 8th, 1876, the company had offered to undo the wrong which it had participated in, and had offered to reinstate her in her rightful position, it might perhaps with some reason and propriety have required on her part the payment of these premiums as a condition precedent to such reinstatement; but so far as the record shows, no such action was taken by it, and on the contrary, it preserved silence, made no response to her demand for recognition, and its conduct must be construed as persistence in its wrong and continued denial of her rights, which, under the circumstances, relieved her of the necessity of making a vain tender. It was not required that she should herself make the payments; vitality would be preserved in the policy in her favor, no matter by whom the premiums were paid, and these premiums were paid on a

policy which, *as to her*, existed in her favor. If the company chose by its own act to attach to that policy a new character and liability, and by mere change of date and name of the beneficiary, to give it validity as to another party, and create thus a double obligation on itself, it must bear the responsibility of its own acts, and cannot release itself from liability, and throw loss upon an innocent party who had no participation in its wrongful acts. Considerations of equity and good conscience require that if Mrs. Pilcher shall avail herself of the full benefits of the policy in her favor, she should comply with the obligations and requirements of the policy, when she is in a position where she can do so, and, therefore, we think the company should be allowed to compensate the premiums for the years from '74 to '78 inclusive, *pro tanto.*

We are next called upon to decide as to the claim of the Louisiana National Bank as transferree and holder of the policy of insurance issued on July 5th, 1871, in which Mason Pilcher's representatives are named and constituted the beneficiaries. It is true a policy of insurance is not what is termed a negotiable instrument, but it is assignable and transferable, and indeed one of the articles or stipulations incorporated in the policy prescribes the manner in which its assignment may be made.

It is contended that Johnson & Goodrich, to whom the policy of 1871 was assigned, were fully informed as to the facts connected with the issuance thereof, and had full knowledge of the defects of that policy, and, therefore, if Johnson & Goodrich had no rights under the transfer to them by Mason Pilcher, the bank, transferree of Johnson & Goodrich, could acquire no greater rights than its transferrer had. But we are clearly of opinion that the Insurance Company is estopped from making such defense as to the bank.

The Insurance Company joined Mason Pilcher in a wrongful attempt to divest Mrs. Pilcher in her right to the policy issued in 1854, in her favor and for her benefit. The company issued what they claimed to be a new policy, and sent it forth, subject to be assigned and transferred in the manner prescribed by them. It was so assigned and transferred to the bank; there is nothing to show that the bank had any knowledge whatever of the circumstances under which the policy sought to be assigned to them had been issued, or that the policy of 1854, in favor of Mrs. Pilcher, "had been," by the company, "allowed to lapse for the purpose" of divesting Mrs. Pilcher of her rights therein, and "having the policy of 1871 issued in its stead, making the heirs or assigns of Mason Pilcher the beneficiaries." As to the bank this was a new policy; the company had issued it as such, its assignment to the bank was acknowledged by them, and they accepted the assignment, without

which acknowledgment or acceptance, no validity would have attached to it, and thus the company is, we think, bound to the bank on its new policy, and is estopped from pleading against the bank the defect of the invalidity of the new policy which the company itself had issued for the purpose of depriving Mrs. Pilcher of her rights, and avail itself in defense of a legal fraud perpetrated by itself. It may be that the company received the premiums on only one policy, but it can blame no one for that but itself. Its own attempted wrong prevented the beneficiary under the first policy from redeeming it when she had a right to do so, and from paying the annual premiums at the time they fell due; it issued as a new policy that of which the bank became assignee in due form, and with its own acknowledgment, acceptance and sanction, and so far as intrinsic evidence in the policy itself is concerned, having no connection with any previous policy, and affording no grounds for the slightest suspicion that it invaded the rights of other persons, or was in any manner tainted with invalidity.

Bliss Life Insurance, under head of Assignments of Policy and Assignments by Married Women, p. 540 et seq.

We think the company is liable to the bank, and cannot aver that there is any other policy to displace that which the bank holds. We regard the company's liability to the bank as distinct and separate from that to Mrs. Pilcher; and this liability is, as contended by counsel of the bank, irrespective of any former policy. The case of Barry vs. Brune et al., 71 New York Reports, was different in its features from the present one. In that case, the court held there was but one policy, and the company should pay but once; in this, as to Mrs. Pilcher and the bank, there were two policies practically, and by the act of the company the beneficiaries separately and distinctly created by the company are each, as to the company, entitled to recover the amounts for whose benefit each of them by distinct acts of the insurer had become entitled.

In support of the views which we have expressed in this opinion, we are sustained by the following authorities: 38 Conn. Rep. 294; 71 N. Y. 261; 36 Conn. 132; 52 N. Y. 312.

We are of opinion that the bank should recover the amount of the policy of July 5th, 1871, less the amount due on its premium note, which must compensate *pro tanto* the indebtedness to the bank on said policy.

It is, therefore, ordered, adjudged and decreed, that the judgment rendered in favor of Mrs. A. M. Pilcher, by the court below, in suit No. 9571, Fifth District Court, parish of Orleans, be amended, and that there be judgment in her favor against the New York Life Insurance Company for the sum of ten thousand dollars, with five per cent per annum interest thereon from December 14th, 1878, to be credited with the sum

of five hundred and twenty-five dollars, with five per cent interest from 17th June, 1871; with a like sum with like interest from June 17th, 1872; with a like sum with like interest from June 17th, 1873; with a like sum with like interest from June 18th, 1874; with a like sum with like interest from June 17th, 1875; with a like sum with like interest from June 17th, 1876; with a like sum with like interest from June 17th, 1877, and with a like sum with like interest from June 17th, 1878; and that the judgment of said lower court in the case of the Louisiana National Bank vs. New York Life Insurance Company, No. 9685, be annulled, avoided and reversed; and proceeding to render such judgment as should have been rendered by the court below, it is ordered, adjudged and decreed that the Louisiana National Bank do have and recover judgment against the New York Life Insurance Company for the sum of ten thousand dollars, with five per cent per annum interest thereon from December 14th, 1878, subject to a credit of one thousand and two dollars and ninety-five cents, to be applied to the principal and interest due to said Louisiana National Bank on the judgment herein, as of the date of March 14th, 1879. It is further ordered, adjudged and decreed, that the amount of eight thousand nine hundred and ninety-seven dollars and ninety-five cents, tendered by the defendant and deposited by order of the lower court in the Canal Bank, in the city of New Orleans, be applied pro rata to the judgments herein rendered; the balance due on each of said judgments to be paid by said New York Life Insurance Company. The costs of this appeal to be paid jointly by the New York Life Insurance Company, defendant and appellant, and Mrs. A. M. Pilcher, plaintiff and appellee, and the costs of the lower court by the New York Life Insurance Company.

---

### ON APPLICATION FOR REHEARING.

The opinion of the Court was delivered by

FENNER, J. In this case briefs have been filed in support of the application for rehearing not only by the original able counsel of the Insurance Company, but also by distinguished counsel of the City of New York, whose ability and learning have been enlisted to press the application with all possible force. These briefs are so elaborate, and have so completely exhausted all resources of reasoning and learning which could sustain the relief applied for, that we feel safe in resting our final determination on the arguments and authorities therein contained, which we have now considered and weighed as fully as if the present were a decision of the case in the first instance. Our convictions remain unshaken as to the correctness of all the propositions on which our original opinion rests.

1st. Mrs. Pilcher had such vested interest in the policy, as the beneficiary thereof, as disabled her husband from assigning or disposing of it without her consent.

To the extent of the premiums which had been paid by Pilcher for her benefit, and of the valuable interest in the policy resulting therefrom, the gift to her had been fully executed, and the resultant interest was her separate and indefeasible property. The additional right was vested in her to continue the policy in force by paying future premiums, if her husband failed or refused to do so. For this purpose, if not otherwise able, she would have had the right to pledge the accrued value of the policy in order to raise the means to pay future premiums. These were valuable rights of which, without her consent, her husband had not the right to deprive her, by assigning, or disposing of, them to others for his own benefit.

The conduct of the company and Pilcher in this transaction imports, by strong implication, a concession on their part of the existence of these rights in Mrs. Pilcher. If they had supposed that he had the absolute right, now contended for, of disposing of the policy in his sole right and at his pleasure, it is impossible to conceive that they would have resorted to the tortuous and indirect mode of accomplishing their purposes which they actually employed.

If such an assignment had been made, it would have been illegal, null and void, and would not have divested Mrs. Pilcher's interest in the policy, which would have continued unimpaired as long as the policy, by whosesoever acts, continued in force, subject of course to the duty of refunding with interest any premiums paid by others than her husband, and inuring to her benefit.

It is conceded that Pilcher was not bound to continue the payment of premiums, and that if thereby, he had suffered the policy to lapse, Mrs. Pilcher's rights might have been forfeited. But there is a broad distinction between the right to suffer the policy to lapse, and the right to assign and dispose of it for his own benefit. There could have been no motive for him to permit the policy to lapse, from which event he would have derived no benefit, and his wife would have been subjected to wanton injury. He would have used every exertion to avoid such a loss, or to enable his wife to avoid it; and the same considerations which, under the transaction as made, enabled him to raise a large sum of money on the policy, would have enabled his wife to have obtained, on the same security, the means of paying accruing premiums, and thus keeping the policy alive. The law, by denying him the power of assigning or disposing of the policy for his own benefit, without the consent of the wife, wisely removes the temptation, to which he would otherwise be subjected, of sacrificing the interest of his wife for his own advantage.

We remain fully of the opinion that the legal propositions above stated are fully sustained by the authorities quoted in the original opinion, and we think the distinctions sought to be traced between them and the instant case are shadowy and unsubstantial. We find nothing in the New York statutes cited on which it is charged the decisions in that State rest, which is entitled to more effect than the doctrines settled by Louisiana jurisprudence in the cases quoted by us, have in the same direction. Our jurisprudence recognizes the rights of the beneficiary wife quite as amply as do the New York statutes.

If, as held in Louisiana, in repeated decisions, the insurance by the husband for the benefit of the wife, is such a valid gratuity in her favor, as to make her right under the policy at his death her absolute and separate estate, the like effect logically attaches *pro tanto* to the valuable interest under the policy created by the payments of premiums for her benefit, as the same are made; and this interest becomes likewise her separate property not disposable by the husband.

2d. We think we rightly held that the transaction between Pilcher and the company, under which the pretended new policy was issued, operated only as a substitute and equivalent for the prohibited assignment of the original policy, and, as between Mrs. Pilcher and the company, is entitled to no greater effect than such illegal and void assignment would have had. Her policy, therefore, did not lapse, but continued and was carried forward in the policy of 1871. In this position we think the authorities cited by us fully sustain us, and we consider them the best authorities on the question.

In reaching our original conclusion as to the solution of Mrs. Pilcher's rights in the premises, we hesitated long between that adopted by ourselves and the one adopted by Chief Justice Beasley as the organ of the court in Landrum vs. Knowles, 22 N. J. Eq., 594, where the beneficiary was allowed only an interest in the insurance to the value of the premiums paid before the transfer. We thought, however, our own solution, based upon the New York and Connecticut decisions quoted by us, was both more logical and more equitable. We hold that the right of the beneficiary wife in the policy could only be terminated by its lapse. We held it never lapsed. Therefore, she was entitled to the insurance, subject to the necessary condition of paying to the party entitled thereto the amount of the premiums and interest which had been paid for her benefit. Had the parties, who paid these premiums, been denied the benefit of the insurance, they would have had the right to reclaim them from Mrs. Pilcher, to whose benefit they had enured. But as, under the peculiar circumstances of this case, we awarded the bank the amount of the insurance, the equitable right to reclaim these pre-

miums passed to the company and they were allowed as a necessary offset to Mrs. Pilcher's claim for insurance.

3d.   The branch of our decision upon the correctness of which we felt, and still feel, the least doubt, is that which maintained the estoppel, in favor of the bank, against the denial by the company of its title to the policy.

Our position on this subject, is not that stated by counsel, viz: "That the policy of 1871 is in law void as to Mrs. Pilcher, but is in fact valid as to the bank because of the estoppel, etc."

Our position is that the *title* to the policy is, *in law*, in Mrs. Pilcher, and, therefore, she is entitled to recover, and that the bank is also entitled to recover, not because it has, in truth, a legal title to the policy, but because the company, by its acts, is estopped from denying the bank's title.

In our original opinion we have, perhaps, not expressed ourselves with perfect accuracy, where we speak of two policies; but the whole context of the opinion explains that we considered the policy of 1871 as being strictly a continuation of the original policy.

The question, therefore, is not as to the validity of the policy, nor as to defenses which the company might have against it.   The validity of the policy is not disputed, nor does the company pretend to have any defenses against it.   The sole question involved is as to the *title* to the policy.

This policy belonged originally, and notwitstanding the change, continued to belong to Mrs. Pilcher.   As originally executed, her title thereto appeared affirmatively on the face of the instrument.   The company, by unlawful collusion with Pilcher, suppressed this original instrument, and issued a new one in lieu thereof, in which it falsely declared that the policy was Pilcher's own, and, therefore, assignable by him.   It did this, as the evidence shows, for the express purpose of enabling him, under cover of this apparent title, to raise money on the policy.   It accepted his assignment thereof, and the subsequent reassignment by his first assignees to a perfectly ignorant and innocent holder, who acted upon the faith of title as represented by the company itself in the body of the instrument and as recognized by the company in all its acts.   It collected from this assignee the premiums down to the death of the insured.

We accuse the company of no intentional wrong; but, for the purposes of this case, it occupies the same position as if it were a deliberate and intentional wrong-doer.   It was a party to unlawful acts, and, as every one is presumed to know the law, it is presumed to have known they were unlawful.   By its affirmative declaration in the body of the instrument that the policy was Pilcher's while (as is presumed) knowing,

and unlawfully concealing, the fact that it was really his wife's; by its acceptance and recognition of Pilcher's assignment and of the reassignment to the bank; and by the reception from the latter of the premiums, "it distinctly authorized and induced the bank to accept and act upon, as true, the state of facts thus represented by itself; and it is now conclusively estopped from denying the truth thereof, and from escaping the performance of those obligations, which result in law therefrom.

It is manifest that none of the numerous cases cited by counsel apply to such a state of case as is here presented.

The difference of facts in the case of Barry vs. Brune, 71 N. Y. 261, from the above, is apparent at a glance. There, the company, in cancelling the policies in favor of the wife and substituting therefor policies in favor of another, acted upon a direct assignment by the wife herself, which was, in fact, genuine, and which the company had no reason to believe invalid. Its conduct was perfectly lawful and innocent. It was, however, proved that the wife's assignment had been obtained through coercion, and was, therefore, invalid. The court decreed, in consequence, that she had never parted with her interest; that the substituted policies took the place of the old policies, and that the money payable thereon must go to the party entitled under the latter. There was, of course, no shadow of ground, in that case, for holding the company liable over again to the apparent holder.

We maintain, therefore, that this case is perfect authority for our decision in favor of Mrs. Pilcher; but is no authority at all against our decision in favor of the Bank. No decision has been, nor, in our opinion, can be cited, which is opposed to the clear right of the bank under the facts here presented.

The application of Mrs. Pilcher for rehearing has no merit whatever. She has received all that the most liberal construction of her rights could possibly allow.

Rehearing refused.