Mrs. Anna Terranova **CATALANO**, and Mrs. **Rosemary** Catalano Loup

v.

**UNITED STATES** of America.

Civ. A. No. 16331.

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 25, 1968.

**1302**

Albert B. Koorie, New Orleans, La., for plaintiff.

Peter Winstead, Fort Worth, Tex., for defendant.

MITCHELL, District Judge.

The plaintiffs, Mrs. Anna Terranova Catalano, widow of William Catalano, decedent, and Mrs. Rosemary Catalano Loup, daughter and sole heir of William Catalano, are seeking recovery of allegedly overpaid Federal Estate Taxes in the amount of $4,295.76, plus statutory interest, resulting from the following:

The basis of this action is that the Commissioner of Internal Revenue included in the decedent's gross estate one half of the proceeds of a $25,000 insurance policy on the life of William Catalano and, further that the District Director of Internal Revenue refused to allow a deduction for real estate taxes paid on property owned by the decedent in Orleans Parish during the year in which he died, 1959.

The case was tried before the Court on September 13, 1968, and, after having heard and considered the stipulations of the parties, the depositions and briefs filed herein, and on both written and oral argument of counsel, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### I

Mrs. Anna Terranova Catalano, widow of William Catalano, who died on October 3, 1959, is the usufructuary of his interest in the community property. Mrs. Rosemary Catalano Loup is the sole and only legal heir of William Catalano and the naked owner of his interest in the community property.

### II

This is an action to recover the sum of $4,295.76, the amount paid as additional federal estate tax by Mrs. Anna T. Catalano, in her capacity as the surviving spouse in community and usufructuary of William Catalano, pursuant to an assessed deficiency plus statutory interest as provided by law, and for all costs.

### III

On June 2, 1958, William Catalano executed an application for a whole life insurance policy, in the amount of $25,000 with the Manhattan Life Insurance Company of New York. The application contained a specific request that the policy be dated April 27, 1958, and provided that he was to be the owner thereof.

### IV

Manhattan Life Insurance Company of New York issued its whole life insurance policy No. 453712, dated April 27, 1958, on the life of William Catalano in the amount of $25,000. Anna T. Catalano, his wife, was named beneficiary.

### V

The policy, as first issued, did not contain a provision stating that Anna T. Catalano was the owner of the policy and the insurance agent who sold the policy to Mr. Catalano subsequently advised him that he should make a gift

of the policy to his wife so that it would become her separate property and, consequently, would then form no part of his estate.

## VI

Pursuant to this advice Catalano signed a request for change of policy reading as follows:

"TO THE MANHATTAN LIFE INSURANCE COMPANY
NEW YORK 19, N. Y.

"I hereby request that my Policy No. 453712 be changed from WILLIAM CATALANO, OWNER

to ANNA CATALANO, OWNER

by alteration of original Policy or by substituting new Policy of same or current date in place thereof; that agreement and statements in the application for the original Policy to remain in full force and to apply to new Policy also.

"I hereby certify that the policy is not now assigned, and that no insolvency or bankruptcy proceedings are pending against me."

"Dated at New Orleans, La., this 29th day of July 1958."

| S/Clay E. Thomas, Jr. | S/William Catalano |
|---|---|
| Witness | Insured |

This application, together with the original policy, was forwarded to the company and, as finally issued, the policy provided:

"The owner of this policy is Anna T. Catalano, wife of the Insured. All options, privileges, values and benefits granted by this policy to the Insured or to the Insured's estate shall belong to said owner or her executors or administrators, anything in this policy to the contrary notwithstanding."

## VII

The policy, as issued on April 27, 1958, its effective date, sets forth the full and complete contractual relationship between the parties thereto.

## VIII

The original issuance of the policy to the decedent, William Catalano, and the subsequent return of the policy by him to the insurance company with his written request that his wife be named owner, followed by the reissuance of the policy with all rights therein irrevocably vesting complete ownership in her, her executors or administrators, constituted affirmative evidence of donative intent by the husband to make the insurance policy the separate property of his wife.

## IX

William Catalano had full knowledge that his wife was the sole owner of the life insurance policy, with all options, privileges, values and benefits granted by the policy being vested solely and only in her, her executors or administrators.

## X

The consideration paid for the policy was an annual premium of $2,816.50, and all premiums were paid with community funds, with the full knowledge and consent of both husband and wife.

## XI

William Catalano died on October 3, 1959 and the policy proceeds of $25,000 were paid directly to Anna T. Catalano,

beneficiary and owner, upon her submission to the company of a proof of claim.

## XII

The Board of Assessors for the Parish of Orleans delivered the assessment rules to the State Tax Collector for the Parish of Orleans during the last week of the month of May, and the first week of June, 1959, for the collection of property taxes for the year 1959.

## XIII

The State Tax Collector commenced the collection of the state ad valorem property taxes for the year 1959 on October 1, 1959. The state property taxes for the year 1959 became collectible on January 1, 1959. One-half of the 1959 state property taxes paid, after William Catalano's death, to the State of Louisiana on property in the Parish of Orleans owned by him, amounted to $596.63.

## XIV

The assessment rolls for 1959 state property taxes were delivered to the Recorder of Mortgages for the Parish of Orleans on November 4, 1959.

## XV

On or about January 1, 1961, Anna T. Catalano filed an estate tax return with the District Director of Internal Revenue, New Orleans, Louisiana, in the name of William Catalano, deceased, and, on or about January 3, 1961, she paid estate tax of $31,085.45 thereon.

## XVI

On or about January 31, 1964, the Commissioner of Internal Revenue assessed additional estate tax and interest amounting to $4,295.76.

## XVII

The additional assessment was made on the basis that one-half of the proceeds of the life insurance policy received by Anna T. Catalano as the beneficiary and owner thereof, amounting to $12,500, should be included in the decedent's gross estate; and that a deduction of $596.63, claimed for one-half of the 1959 state ad valorem property taxes paid to the State of Louisiana, should be disallowed.

## XVIII

On or about February 6, 1964, Anna T. Catalano, as beneficiary of the policy, surviving spouse and usufructuary, paid to the Internal Revenue Service the additional estate tax and accrued interest amounting to $4,295.76.

## XVIX

On or about July 2, 1965, Anna T. Catalano, timely filed with the District Director of Internal Revenue, New Orleans, Louisiana, a claim for refund of the amount of $4,295.76 paid as an additional assessment.

## XX

By certified letter bearing the certified No. 177323, dated November 19, 1965, the District Director of Internal Revenue, New Orleans, Louisiana, disallowed the claim of Anna T. Catalano for a refund of the additional estate tax and interest in the amount of $4,295.76.

## XXI

No part of the deficiency of $4,295.76, plus statutory interest, has been refunded to Anna T. Catalano and this action is based on the disallowed claim for refund of the deficiency of $4,295.76 determined and collected by the Internal Revenue Service.

## CONCLUSIONS OF LAW

### I

This Court has jurisdiction of the parties and over the subject matter of this controversy.[1]

1. 28 U.S.C. § 1346(a)(1).

## II

The Internal Revenue Code of 1954,[2] with respect to proceeds of life insurance, provides:

"The value of the gross estate shall include the value of all property—

"(1) Receivable by the executor.— To the extent of the amount receivable by the executor as insurance under policies on the life of the decedent.

"(2) Receivable by other beneficiaries.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. * * * "

## III

■ The ownership of the insurance policy in question is to be determined by the law of the State of Louisiana.[3]

## IV

■ In Louisiana, a man may give to his wife, during marriage, all that he may give to a stranger.[4]

## V

■ In Louisiana, a life insurance policy is a contract SUI GENERIS, governed by rules peculiar to itself, the outgrowth of judicial precedent and is not governed by the articles of the Louisiana Civil Code as to ownership of the policy itself or as to ownership of the proceeds value thereof.[5]

## VI

■ No particular form is required to evidence a donation of a life insurance policy in Louisiana.[6]

## VII

■ In Louisiana, an insurance policy on the life of the husband naming the wife as sole owner and beneficiary with the right vested in the wife to exercise alone all of the incidents of ownership is the separate property of the wife from the moment of the issuance of the policy; it is not owned by the community existing between the husband and the wife at the time the policy is issued.[7] To that extent the community property law of Louisiana is different from the community property law of the State of Texas as determined in Freedman v. United States.[8]

## VIII

■ Premiums paid out of community funds by the husband on a life insurance policy which irrevocably names his wife as owner and beneficiary are considered as gifts by the husband to the wife for the benefit of her separate estate.[9]

## IX

■ Conceding that the policy originally issued to the decedent, William Catalano, was not the separate property of Anna T. Catalano upon issuance of that policy, the return of the policy to the insurance company by the husband with evidence of donative intent by the husband, i. e., the request in writing that his wife be named owner, followed by the reissuance of the policy with all rights therein irrevocably vesting complete ownership in her, her executors or administrators, is abundantly sufficient evidence of donative intent by the husband to make the insurance policy (including all policy rights as well as all

2. 26 U.S.C. § 2042.

3. Lang v. Commissioner of Internal Revenue, 304 U.S. 264, 58 S.Ct. 880, 82 L. Ed. 1331 (1938); Freedman v. United States, 382 F.2d 742 (C.A. 5–1967).

4. La.C.C. Art. 1746.

5. Sizeler v. Sizeler, 170 La. 128, 127 So. 388 (1930).

6. La.R.S. 22:1521.

7. Pilcher v. New York Life Insurance Company, 33 La.Ann. 322 (1881); Succession of Desforges, 135 La. 49, 64 So. 978, 52 L.R.A.,N.S., 689 (1914).

8. Supra.

9. Succession of Desforges, supra; Kelly v. Kelly, 131 La. 1024, 60 So. 671 (1913).

proceeds rights) the separate property of the wife.[10]

X

In Louisiana, although the husband alone is head and master of the community, community property acquired in the name of the wife cannot be alienated or mortgaged unless the husband and wife join in the act of alienation or mortgage.[11] However, where the wife is named owner of a policy acquired during the community and alone has the power to pledge, assign, surrender, or otherwise deal with an insurance policy on the life of the husband, the wife in dealing with the policy does not act as agent of the community but acts in her separate capacity as sole owner of the policy which is her separate property.

XI

In a true agency relationship, the authority of the agent can be revoked at any time by the principal without the agent's consent,[12] but where a husband names his wife as owner of a life insurance policy, the husband as head and master of the community cannot revoke the wife's authority to exercise the incidents of ownership under the policy. On the contrary, the insurance company, under its contract with the wife, can legally deal only with her concerning the incidents of ownership vested

in her as owner of the policy, and the company cannot legally deal with the husband alone as principal or as head and master of the community or in any other capacity.

XII

The status and value of property in the Parish of Orleans in the State of Louisiana on August 1 of each year fixes the taxes for the following calendar year.[13]

XIII

The 1959 Louisiana real estate property taxes were collectible on January 1, 1960.[14]

XIV

The Louisiana ad valorem property tax had accrued not later than October 1, 1959, as an obligation collectible by the State Tax Collector.

XV

Let judgment be entered accordingly, in favor of Mrs. Anna T. Catalano, widow of William Catalano, and Mrs. Rosemary Catalano Loup against the United States awarding her the sum of Four Thousand Two Hundred Ninety-Five and 76/100 ($4,295.76) Dollars, plus statutory interest thereon from February 6, 1964, and for all costs.

---

10. Succession of Videau, 197 So.2d 655 (La.App.1967); (La.R.S. 22:1521).

11. La.C.C. 2334.

12. La.C.C. 3028.

13. La.R.S. 47:1703 and 47:1994. La. Act 125 of 1959 which amended R.S. 47:1994 to change the property-status date to January 1 for fixing the taxes for such calendar year, beginning with the year 1960, and La. Act 316 of 1962 which again amended 47:1994 to change the property-status date back to August 1

for fixing the taxes for the following calendar year, beginning with the year 1964, are not applicable to the fixing of the taxes for the year 1959.

14. La.R.S. 47:1997 required that copies of the assessment rolls for 1959 taxes be sent to the State Tax Collector and Recorder of Mortgages for the Parish of Orleans on or before October 15, 1968, although they were actually sent to the State Tax Collector in May, 1959, and to the Recorder of Mortgages on November 4, 1959.