TIMAYENIS and others *v.* UNION MUTUAL LIFE INS. CO. and another.

*(Circuit Court, S. D. New York.* August 1, 1884.)

1. LIFE INSURANCE POLICY—INVALID CHANGE OF DESIGNATION.

A person who effects a policy of insurance upon the life of another for the benefit of the latter's wife, which by its terms becomes a paid-up policy after the payment of two annual premiums, cannot, after such premiums have been paid, surrender the policy, without the consent of the beneficiary, by an arrangement with the insurer. In such case, the wife can recover the amount for which the policy is a paid-up one, by the terms of the policy, upon the death of her husband.

2. SAME—PREMIUM—PROMISSORY NOTE.

If a party who effects an insurance upon another's life for the benefit of the latter's wife passes to the insurer his promissory note for the premium, in-

stead of paying the premium in money, the insurer is under no obligation to the beneficiary to enforce the notes against the maker, any more than he would have been to receive them originally instead of the money for the premiums. Accordingly, if, when the notes are paid, the payment, by an arrangement between the parties to the notes, is applied to a different purpose, such payment does not inure to the benefit of the beneficiary in the policy as a payment of the premium.

3. SAME—PROOF OF DEATH—ESTOPPEL.

Where a policy provided for due notice and proof of the death of the insured and of the just claim of the assured, and the insurer had paid the amount of the policy to a party not entitled by law to its benefits, he having presented proofs of the death of the insured to the insurer, and afterwards the rightful beneficiary made proof by affidavit of the death of the insured and the just claim of the assured, a general objection by the insurer to the sufficiency of the proofs is not good.

At Law.

*Jefferson Clark*, for plaintiff.

*Merritt E. Sawyer*, for defendant.

WALLACE, J. The plaintiffs are the widow of one Timayenis, now deceased, and her children by him, and they sue to recover the amount due upon a policy of insurance issued by the defendant, April 1, 1869, upon the life of the husband. The defendant is a corporation of Massachusetts, and the policy was issued in that state upon the application of one Rodocanachi, a brother of the widow.

The policy recites an application by Rodocanachi for insurance on the life of Timayenis, and the agreement of Rodocanachi to pay annual premiums for 10 years. It is conditioned to insure the life of Timayenis "for the sole and separate use and benefit of his wife, Fotini Timayenis, and their children, in the amount of $5,000,  *  *  * payable to the said assured, their executors, administrators, or assigns, ninety days after due notice and proof of the death of the said insured and the claim of the assured." The annual premiums are $370.25, and the policy provides that after two or more of the annual premiums are paid the policy is to be a paid-up, non-forfeitable one in the sum of $500 for each premium paid. Rodocanachi was the brother of Mrs. Timayenis, and procured the policy out of regard for her, gratuitously, and in order to secure her a provision in case of her husband's death. She resided in Smyrna at the time, and upon obtaining the policy he wrote to her, inclosing a copy of it, telling her, in substance, that he had insured her husband's life as a resource for her, and that he had kept the original policy in order to collect the proceeds, in case of her husband's death, and use them in his discretion for her benefit. After having made payment of four annual premiums, Rodocanachi surrendered the policy to the defendant, and subsequently obtained from the defendant a paid-up policy for his own benefit on the life of Timayenis, and payable to himself, for the sum of $2,500. He had made these payments partly in cash and partly by his own notes, which were outstanding at the time he surrendered the policy. This was done without consultation with Mrs. Timayenis, and was not known to her or to either of the plain-

tiffs until after the death of Mr. Timayenis. He died May 29, 1882. Proofs of death were forwarded to the defendant by Rodocanachi, and defendant paid to him the amount due on the new policy.

There is nothing in the case to indicate any bad faith on the part of Rodocanachi or of the defendant. The former supposed he had a right to control the policy, and any fund that might accrue under it, and the defendant acted upon that assumption, and treated him as the insurer, and the party entitled to any insurance which might arise.

Upon these facts it must be held that the defendant entered into a contract with the plaintiffs for insurance upon the life of Timayenis, by the terms of which the defendant, upon the payment of two or more annual payments of premium, became obligated to pay plaintiffs, upon the death of the insured, the sum of $500 for each annual premium received by defendant. It is quite immaterial that the defendant was induced to enter into this contract by Rodocanachi, the legal effect being the same whether he was the moving party, or whether the insured or the plaintiffs had been instead of him. Neither is it material that the contract would have ceased to be obligatory upon the defendant if Rodocanachi had failed to continue paying the premiums; it suffices that they were paid, and that the defendant received the consideration stipulated for. Upon the receipt of the premiums the obligation of the defendant to the plaintiffs and the right of the plaintiffs to receive $500 for each premium paid became fastened.

The recitals in the policy show plainly that the defendant did not regard Rodocanachi as an agent of the plaintiffs, or of the insured, to effect the insurance, but as a volunteer who was representing himself only, and who had intervened in the transaction for the benefit of the plaintiffs. The defendant had, consequently, no right to regard him as an agent for the plaintiffs in surrendering the policy and entering into a new contract of insurance. And, in fact, the defendant did not deal with him upon such an assumption, but treated him as the principal, who had a right to surrender the policy because he had advanced the premiums.

The circumstance that Rodocanachi retained the policy, and intended to collect it and apply the proceeds at his discretion, upon the death of the insured, may be laid out of view. The policy was merely the evidence of the contract which had been entered into between the parties—unimpeachable evidence of the terms of the contract, but nothing more. His intention to collect it and control the proceeds cannot alter the legal effect of the contract.

The case is no stronger for the defendant than it would be if Rodocanachi had paid the premiums in advance at the time the policy was issued, and had then refused to pay more. And had this been the case, and had the plaintiffs remained ignorant of the whole transaction until the death of the insured, it is clear they could have sued

upon the policy and recovered the amount paid up. Rodocanachi could not have compelled payment of the amount from the defendant, because the insurance was effected for the use and benefit of the plaintiffs, and the defendant's promise to pay, or obligation to perform, ran to them, and to them only. The plaintiffs could have done so although ignorant of the transaction at the time, because the contract was made for their benefit, and they were named in it as the parties, and the only parties, interested in its performance. *Austin v. Seligman,* 18 FED. REP. 519; *Simson v. Brown,* 68 N. Y. 355; *Hendrick v. Lindsay,* 93 U. S. 143.

Where a policy designates a person to whom the insurance money is to be paid, the person who procures the insurance, and who continues to pay the premiums, has no authority to change the designation or title of the money. *Ricker v. Charter Oak L. Ins. Co.* 27 Minn. 195; S. C. 6 N. W. Rep. 771; *Pilcher v. N. Y. Ins. Co.* 33 La. Ann. 332. He may be under no obligation to continue to pay the premiums; but if he does, the person originally designated in the policy will derive the benefit, and any change of designation can only be made by his authority. Bliss, Life Ins. §§ 339–341, and cases there cited.

By paying the premiums, Rodocanachi advanced the amount to the defendant in trust for the use of the beneficiaries, and the terms of the policy are the conditions of the trust. A gift to a third person for the use of the donee is valid, and can no more be revoked than a gift made directly to the donee. *Wells v. Tucker,* 3 Bin. 366; *Coutant v. Schuyler,* 1 Paige, 316. In the act of disposing of his own the donor can attach such conditions and restrictions as he sees fit, but afterwards his power is gone. When the trust attaches, neither he nor the trustee can exercise any power over the subject-matter, except conformably with the terms of the trust. Bisp. Eq. § 67. The beneficiaries not having consented to the substitution of a new fund in place of that created by the original policy, the case stands as to them as if none had ever been made. *Fortescue v. Barnett,* 3 Mylne & K. 36.

The contract was made in Massachusetts and was to be performed there, and is therefore governed by the laws of that state. The statutes of that state declare that a policy expressed to be for the benefit of a married woman, whether procured by herself, her husband, or any other person, shall inure to her separate use and benefit, and that of her children, independently of her husband or his creditors, or the person effecting the same, or his creditors. Gen. St. c. 58, § 62. It is stated by the court in *Gould v. Emerson,* 99 Mass. 154, 156, to have been the manifest purpose of the statute, among other objects, to restrain the person thus effecting insurance for the benefit of the wife and children of the insured, "from revoking in a moment of caprice or embarrassment the trust which he has once created upon a meritorious, and by the statute a sufficient, consideration." If the case

was not free from doubt upon general principles, it would be clearly so by force of the local law.

The policy provided for due notice and proof of the death of the insured before the termination of the policy and of the just claim of the assured, or the executor, administrator, guardian, or assigns of the assured. Soon after the death of the insured, one of his children notified the defendant of the death of his father, and was informed by the defendant that the claim was settled and paid to Rodocanachi. Shortly thereafter, one of the plaintiffs sent to the defendant an affidavit which stated the death of the insured, and the time and place of his death, and referred to the proof on file with the defendant made by Rodocanachi for further information, and which also stated the facts showing the right of the plaintiffs to claim the insurance. The defendants, in reply, stated they were still waiting for the proofs of death, but did not point out any reason for objecting to the proof furnished. As the proofs of the death of the insured already in possession of the defendant had been accepted by them as satisfactory, there is no merit in the contention of the defendant that the plaintiffs have failed to comply with the terms of the policy in this respect. If the defendant had not already waived any proof of death by claiming that they had paid the loss to the person entitled,—*Norwich Transp. Co.* v. *Western Mass. Ins. Co.* 6 Blatchf. 241; *Bennett* v. *Maryland Ins. Co.* 14 Blatchf. 422; *Unthank* v. *Travelers' Ins. Co.* 4 Biss. 357; *Tayloe* v. *Merchants' Fire Ins. Co.* 9 How. (U. S.) 390,—they did waive further proof than the affidavit by failing to specify any grounds of objection to it in form or substance. Ang. Ins. §§ 242, 245.

At the time Rodocanachi surrendered the policy to the defendant, the defendant had accepted his note for $566, in lieu of the money to that extent due from him for annual premiums. These notes were unpaid until after he surrendered the policy. When defendant paid him the loss under the new policy issued to him, the defendant, by an arrangement with him, deducted the amount of the notes from the insurance moneys and satisfied the notes. It would, undoubtedly, have been permissible, between him and the defendant, to have allowed the original policy to lapse. By its terms it would have lapsed upon the non-payment of the notes. He was under no obligation to the plaintiffs to pay these notes, any more than he would have been if he had given them directly to the plaintiffs, (*Pearson* v. *Pearson,* 7 Johns. 26; *Fink* v. *Cox,* 18 Johns. 145; *Holliday* v. *Atkinson,* 5 Barn. & C. 501; *Parish* v. *Stone,* 14 Pick. 198; *Holley* v. *Adams,* 16 Vt. 206; *Raymond* v. *Sellick,* 10 Conn. 485,) because a gift of one's own note is a gift of a promise merely. And as the transaction, so far as the payments were concerned, was exclusively between the defendant and himself, the defendant was under no obligation to plaintiff to enforce the notes against him, any more than it was to receive them originally instead of the money for the premiums. If

Rodocanachi had been acting as the agent of the plaintiffs different considerations would arise. *Dutton* v. *Willner*, 52 N. Y. 312. When he did pay the notes he did not make payment of them, nor did the defendant accept payment of them, as applicable to the premiums upon the original policy. They were paid, and payment was accepted, in extinguishment of an independent claim existing in his favor against the defendant. So far as the plaintiffs are concerned, the case stands as though they had never been paid. Deducting the amount of the notes, only two annual premiums had been paid upon the policy in suit.

The plaintiffs are therefore entitled to recover $1,000, with interest, which begins to run 90 days after October 16, 1882, the date of the service of the affidavit of the proof of death and the claim of the plaintiffs upon the defendant.

Judgment is ordered accordingly.