LOUIS LEEKER et al., Appellants, v. PRUDENTIAL INSURANCE COMPANY OF AMERICA, Respondent.

**Springfield Court of Appeals, January 3, 1911.**

1. **LIFE INSURANCE:** Extended Insurance. A life insurance policy for $500 was issued to deceased on January 1, 1901. In 1904 he borrowed from the insurance company on the policy $12.50, and applied this loan to payment of the quarterly premiums due in January and April of that year. No further premiums were paid and the insured died February 10, 1908. The policy having been in force three full years and after three annual payments had been made thereon, was held to come under the express terms of section 7897, Revised Statutes 1899; but under the uncontradicted evidence of the expert actuary, it appeared that the temporary insurance provided for under the statute had expired prior to the death of the insured.

2. ———: ———. Where a life insurance policy contained no provoision for "an unconditional surrender value" equal to the net single premium, as provided in section 7900, Revised Statutes 1899, then according to said section the policy is governed by section 7897, Revised Statutes 1899.

3. ———: ———: Statutory Provision: Policy Provision. The beneficiaries under a life insurance policy contended that although the extended or temporary insurance provided for by section 7897, Revised Statutes 1899, had expired prior to the death of the assured, yet they were not bound by the statute and had the option of taking the more favorable terms for extended insurance provided for by the policy. The question whether the beneficiaries were entitled to an election between the provisions of the statute and the terms of the policy is not decided, for it appeared that even under the terms of the policy the extended insurance had expired prior to the death of the insured.

4. ———: ———: Deduction for Indebtedness: Policy Issued to Wife. Where a life insurance policy contains a provision authorizing the deduction of any indebtedness owing by the insured, this provision will be enforced, although the beneficiary in the policy is the wife of the insured, and although she in no way joined in the creation of the indebtedness, and in spite of section 7895, Revised Statutes 1899, which provides that policies of insurance expressed to be for the benefit of the wife of the insured should inure to her benefit independent of the creditors of the husband.

5. ———: ———: ———: **Vested Rights.** Even though the beneficiary in a life insurance policy may have a vested right therein, yet that right is necessarily subject to the terms of the policy, since such right depends upon the contract, and so where the insured borrowed money from the company to pay premiums on the policy, the terms of which permitted a deduction of such indebtedness from the reserve value of the policy, the beneficiary cannot complain of the loan nor of its deduction in estimating the extended insurance.

6. **EVIDENCE: Judicial Notice: Intricate Computation: Life Insurance.** The rule that courts will take judicial notice of ordinary mathematical propositions, as well as of scientific facts, which universal experience has rendered axiomatic, is not applicable to the ascertainment of the present net value of a life insurance policy depending partly on extraneous facts and partly on the accuracy of an intricate computation.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams,* Judge.

*James J. O'Donohoe* for appellants.

The transaction of February 18, 1904, whereby the defendant loaned the insured the sum of $12.58, was an investment, and the fact that the money loaned was applied to the payment of premiums is immaterial, since there is still no "notes or other evidence of indebtedness to the company given on account of past premium payments." The premiums were paid in cash and the evidence of indebtedness is for a loan. Burridge v. Ins. Co., 211 Mo. 158; Smith v. Ins. Co., 173 Mo. 329; Lewis v. Ins. Co., 187 U. S. 335; Insurance Co. v. Wright, 126 Fed. 82; Insurance Co. v. Dutcher, 95 U. S. 269; Insurance Co. v. Doster, 106 U. S. 30; Insurance Co. v. Wallace, 93 Ind. 7; Insurance Co. v. Little, 56 Ind. 405; Insurance Co. v. Ross, 63 Ga. 205. (2) The extended insurance cannot be diminished by the loan, the payment thereof being otherwise provided for in the policy. Bozeman's Admr. v. Ins. Co., 113 S. W. (Ky.) 836; Insurance Co. v. Woods, 39 N. E. (Ind.) 205. (3) The appellants had a fixed and vested interest in the policy out of which they could not be divested. The insured

and insurer could not by loan or otherwise destroy or affect the vested .extended insurance under the policy without appellants' consent. Packard v. Ins. Co., 9 Mo. App. 469; U. S. Casualty Co. v. Kacer, 169 Mo. 301; Blum v. Ins. Co., 197 Mo. 513; Allis v. Ware, 9 N. W. (Minn.) 666; Bank v. Flynn, 78 N. W. (Neb.) 505; Bank v. Whittle, 3 Atl. (N. H.) 645; Ferdon v. Canfield, 10 N. E. (N. Y.) 146.

*Fordyce, Holliday & White* for respondent.

(1) The evidence shows and the plaintiffs admit that if the extended insurance be calculated according to the provisions of section 7897, R. S. 1899, the policy was not continued in force until the death of the insured. Fiedler v. Bambrick, 135 Mo. App. 305; State to use v. O'Neil, 151 Mo. 80; St. Louis v. Contracting Co., 210 Mo. 502. (2) Extended insurance in this case must be calculated according to the terms of section 7897, R. S. 1899, since the policy in suit did not contain a provision for an unconditional surrender value at least equal to the net single premium for the temporary insurance as provided in section 7897 and, therefore, said section must apply according to the terms of section 7900, R. S. 1899 (sec. 6949, R. S. 1909). Cravens v. Ins. Co., 148 Mo. 613; Insurance Co. v. Cravens, 178 U. S. 389; Smith v. Insurance Co., 173 Mo. 338; Whittaker v. Insurance Co., 133 Mo. App. 670; Nichols v. Ins Co., 176 Mo. 382; Burridge v. Ins. Co., 211 Mo. 158. (3) If the extended insurance could be calculated in accordance with the terms of the policy, as contended by plaintiffs, the undisputed evidence shows that the entire indebtedness should be deducted and the extended insurance would have been shorter than if figured according to section 7897, R. S. 1899; Webb v. Ins. Co., 134 Mo. App. 576; Dakan v. Ins. Co., 125 Mo. App. 451; Hoover v. Ins. Co., 93 Mo. App. 118.

NIXON, P. J.—This was an action upon a policy of life insurance issued by the respondent upon the life of Louis E. Leeker, of St. Louis, Missouri, whereby said life was insured to the amount of five hundred dollars. The plaintiffs were the beneficiaries named in the policy. The case was tried by consent of parties before the circuit judge sitting as a jury and judgment was rendered for the defendant company from which the plaintiffs appealed to the St. Louis Court of Appeals. The cause was thereupon transferred to this court and an abstract and briefs were prepared and filed in this court by both parties. The appellants agreed that the case should be submitted on the brief they had filed, and the respondent argued the case, neither side in any manner questioning the jurisdiction of this court to hear and determine this cause.

As we have stated, the life of Louis E. Leeker was insured by a policy issued by the respondent company on January 19, 1901, the consideration being the payment on or before the 19th day of January, April, July and October in each year, during the continuance of the policy, of the quarterly premium of $6.29. Among other "special privileges" to which the holder of the policy was entitled, as a part of the policy, was the following: "Grace in Payment of Premiums.—In the payment of any premium under this policy, except the first, a grace of one month will be allowed, during which time the policy will remain in force." The insured paid his quarterly premiums in cash until the payment of January 19, 1904, became due. At that time, insured was a cab driver, but was on a strike and financially embarrassed, and on the 18th day of February, 1904, the same being the last day of grace allowed by the policy for the payment of the past due premium, he called on the superintendent of the company for the purpose of borrowing money to pay the premium which had become due on the 19th of January, 1904. By the terms of the

policy, a provision was made for loans, and under the head "Privileges" it was provided as follows:

"Cash Loans.—If this policy be continued in force, the insured may borrow from the company the amount specified in the following table, by making written application for the loan and assigning the policy to the company as security in accordance with the terms of the company's loan certificate, provided five per cent interest on the whole amount of the loan be paid annually in advance; but no loan will be made for less than twenty dollars, except to pay premiums on this policy."

The table referred to, providing for cash loans, contains this provision: "The benefits stated in the following tables apply to the original sum insured only. Any indebtedness to the company placed on the policy will operate to reduce the benefits."

Under the "age of the insured" which applied to the case of Louis E. Leeker the table shows that by reason of the agreement he was entitled to borrow the sum of eighteen dollars at the time he applied for the loan. When he applied for the loan, the superintendent of the company told him the policy had a loan value of less than twenty dollars, and therefore, under its terms, the insured could borrow only for the purpose of paying premiums. Thereupon the insured executed to the company, under the terms of its policy, a loan certificate, containing, among others, the following provisions:

"This is to certify that I, the undersigned Louis E. Leeker, the insured . . . have this day borrowed from the said company the sum of $12.58, and hereby assign, transfer and set over unto the said company, its successors and assigns, the said policy and all benefits now due or which may hereafter become due thereon, to secure the payment of said loan and the interest thereon as herein provided. It is under stood and agreed: First. —That the sum borrowed shall bear interest at the rate of five per cent per annum, payable in advance, and that said interest unless duly paid shall be added to the

above loan and bear interest at the same rate and on the same conditions."

This loan certificate was sent to the Home Office of the company and the loan was approved and the account of Louis E. Leeker was credited with the sum of $6.29 for the unpaid premium of January 19, 1904, then past due, and for the quarterly payment that would become due on April 19, 1904. At the time the loan was made no money was paid to the insured, but the proceeds of the loan were credited in premium payments, as above stated. These credits covered the entire proceeds of the loan and paid in full the premiums due prior to July 19, 1904, but the quarterly payment due on that date was not paid, nor were any subsequent premiums paid on the policy by any person. The insured died on the 10th day of February, 1908, being indebted to the company in the sum of $12.58 as evidenced by the loan certificate above referred to. It thus appears that insured died three years and two hundred fourteen days after he had refused or neglected to pay his policy premium, and that his policy lapsed and became forfeited under its terms, by reason of the non-payment of these premiums, after it had been in force three full years and after three annual payments had been made on the policy. It is therefore seen that this policy came within the express terms of section 7897, Revised Statutes 1899, which is as follows:

"No policies of insurance on life hereafter issued by any life insurance company authorized to do business in this state, . . . shall, after payment upon it of three annual premiums, be forfeited or become void, by reason of non-payment of premiums thereof, but it shall be subject to the following rules of commutation, to-wit: The net value of the policy, when the premium becomes due, and is not paid, shall be computed upon the actuaries or combined experience table of mortality, with four per cent. interest per annum, and after deducting from three-fourths of such net value, any notes or other

evidence of indebteness to the company, given on account of past premium payments on said policies, issued to the insured, which indebtedness shall then be canceled, the balance shall be taken as a net premium for temporary insurance for the full amount written in the policy; and the term for which said temporary insurance shall be in force shall be determined by the age of the person whose life is insured at the time of default of premium, and the assumption of mortality and interest aforesaid; . . . ."

The policy of Louis E. Leeker contained no provision for "an unconditional surrender value" equal to the net single premium as provided in section 7900, Revised Statutes 1899, and therefore section 7897 must apply according to the terms of said section 7900. [Cravens v. N. Y. Life Ins. Co., 148 Mo. 583, 50 S. W. 519; Smith v. Mut. Ben. Life Ins. Co., 173 Mo. 329, 72 S. W. 935; Whittaker v. Mut. life Ins. Co., 133 Mo. App. 664, 114 S. W. 53; Nichols v. Mut. Life Ins. Co., 176 Mo. l. c. 382, 75 S. W. 664; Burridge v. N. Y. Life Ins. Co., 211 Mo. 158, 109 S. W. 360.]

If the extended insurance in this case is calculated according to the terms of section 7897, the policy would not be continued in force until February 10, 1908, the date when Louis E. Leeker died. The uncontradicted evidence of the expert actuary was to the effect that the calculation made under said section 7897 would lead to the following results:

"The reserve on a whole life policy, for $500, issued at the age of 45, at the end of three and one-half years, according to the combined experience table of mortality with four per cent. interest, was $32.27. Taking three-fourths of this amount under said section would leave the sum of $24.20. Deducting the indebtedness of $6.29 from $24.20, left a balance of 17.91 with which to purchase term insurance for $500. The net single premium for two years' term insurance would have been $13.94 while the net single premium for three years' term in-

surance would have been $20.94. Therefore, by propor-. tion, the amount of the balance, namely, 17.91, purchased term insurance for two years and 207 days. And after February 11, 1907, the policy under its provisions was no longer in force and the benefits thereunder ceased at that date."

The force of this evidence was so conclusive upon the plaintiffs' case as to lead their attorney to make certain admissions in the trial court to the effect that plaintiffs did not contend that they obtained an extension of term insurance by reason of the operation of said statute in this case, his admissions being in these words: "I think it may be conceded that under the non-forfeiture statutes of this state, that the three years' premiums would not carry this policy beyond the date of the death of the insured. I have taken an opinion from the actuaries and I admit that, because if I didn't admit it we would prove it. I have failed to prove it because it hasn't anything to do with the merits in this case. What I stand on is, among other things, first: That the policy itself, by its own terms, carries it; that there can be no loan put upon the policy which will defeat it, because the policy itself declares that the benefits stated in the tables apply to the original sum insured only." Counsel also states in his brief: "It was conceded in the trial court, and is still acknowledged by the plaintiffs, that calculating the extended insurance under the non-forfeiture statute of Missouri, the policy was not continued in force until the death of the insured." But the appellants contend they are not bound by the terms of the statutes, and that there is no statute or decision in this state prohibiting the parties from entering into a contract of insurance which provides for extended insurance in excess of the statute. "If the provisions of a policy of life insurance, in case of a default in the payment of a premium after two full annual payments have been paid, entitle the insured to the unconditional commutation of the insurance effected by it

into non-forfeitable insurance of a value equal to or greater than that prescribed by the statute in such case, that statute has no application." [Price v. Conn. Mut. Life Ins. Co., 48 Mo. App. 281.]

Whether the appellants were entitled to an election between the provisions of the statute and the terms of the policy is not necessary to be determined in this case as the sequel of this opinion will show, and we will proceed on the assumption that the rights of the parties to this litigation are measured by the provisions of the policy. Attention is therefore directed to the terms of the policy in order to determine these rights. The policy contains this provision as to extended insurance:

"Paid-up Life Policy or Extended Insurance.—If this policy, after being in force three full years, shall lapse or become forfeited for the non-payment of any premium or any note given for a premium or loan made in cash on such policy as security, or of any interest on such note or loan, it may be surrendered for a non-participating paid-up life policy as specified in the following table; provided the policy be legally surrendered to the company within three months after such lapse or forfeiture. If this policy, having lapsed or become forfeited as above, be not surrendered for a paid up life policy, the company will write in lieu of this policy, and without any action on the part of the insured, a non-participating paid-up term policy for the full amount insured by this policy, and to continue in force for the term indicated by the table of extended insurance on the third page hereof; provided, however, that if there be any indebtedness to the company on account of this policy, the amount of such paid-up term policy shall be the face amount of this policy less the amount of such indebtedness, and the term for which such paid-up term policy shall run shall be changed to that term for which the full reserve value of this policy, computed by the American Experience Table of Mortality and three per cent. interest, after deducting such indebted-

ness, will carry the modified amount at the Single Premium Intermediate Term rates of the company."

It will be seen by this provision that the paid-up term policy is to be calculated for the full amount insured by the policy provided the premiums have been fully paid up to the time and there is no indebtedness due from the insured to the company at the time he becomes entitled to such non-participating paid-up policy. In such case, the term for which such non-participating policy is to run is provided for by the table of extended insurance on the third page of the policy of insurance which table contains the following heading: "Extended Insurance. Table showing the length of time the insurance under this policy will be carried by the company from date of lapse without further payment of premiums, if application be not made for a paid-up life policy within three months from date of lapse, and provided the policy has been in force for three years." Under this table, the insured was entitled to extended insurance for three years and 249 days. But it will be perceived that such extension is conditioned on the fact that insured was not at the time of such extension indebted to the company for the non-payment of any premium or any note given for a premium or loan made in cash on such policy as security. It is thus apparent that the right of extension would not be governed by the first part of the above provision quoted from the policy. But the clause in said provision, beginning "provided, however," (which words we have written in italics) is made especially to apply to cases of indebtedness of the insured.

As we have stated, on February 18, 1904, the insured borrowed on his policy by his loan certificate the sum of $12.58, which amount was never repaid to the company. This, as we have seen, was an indebtedness incurred for two premium payments and the loan certificate was given for the same, and, under the terms of the

policy, was an indebtedness to the company which was to be deducted in ascertaining the period of time for which the paid-up term policy should run. There is no evidence of any calculation by any actuary or other person showing how long a term of extension the policy holder would be entitled to under the provision of this life policy in case of this particular amount of indebtedness, and the court cannot take judicial notice of such facts. The rule, that courts will take judicial notice of ordinary mathematical propositions, as well as of scientific facts which universal experience has rendered axiomatic, is not applicable to the ascertainment of the present net value of a life insurance policy, depending partly on extraneous facts and partly on the accuracy of an intricate computation. [Price v. Conn. Mut. Life Ins. Co., supra.] But there is sufficient data in the record in this case to show that if extended insurance be calculated according to the terms of this policy, as contended for by appellants, such extended insurance would have expired prior to the death of the insured. As shown by the testimony of the expert actuary, the reserve on a whole life policy for $500, issued at the age of forty-five years, at the end of three and one-half years, according to the combined experience table of mortality, with *four per cent. interest,* would be $32.27. Deducting from this amount the amount of the loan certificate ($12.58)—the indebtedness of the insured to the company—we have a balance of $19.69 with which to purchase term insurance under the terms of the policy. The actuary further testified that the net single premium for three years' term insurance would be $20.94, a sum greater than $19.69. Hence, the extension must have been less than three years. So that, giving the policy holder a calculation of *four* per cent. interest instead of three per cent. as provided by the policy, under the terms of the policy for extended insurance, such term insurance would have expired prior to July

19, 1907, whereas the insured died on February 10, 1908.

Another contention of appellants is that the company cannot deduct this indebtedness of $12.58 in computing the extended insurance because the beneficiaries did not join in the application for a loan, and that the company will not be permitted to deprive them of their vested rights without their consent. The authorities cited by counsel to sustain this state the generally recognized proposition that neither the insured alone nor the insured and the company acting together will be permitted to change the beneficiary in the policy where a privilege of change is not expressly reserved. It is certainly difficult to see what bearing such authorities can have upon the case at bar. Granting that the appellants, as beneficiaries, had a vested right in the policy, their right was necessarily subject to the terms of the contract since such right depended upon the contract. As already pointed out, by the terms of the policy the insured was permitted to obtain a loan on this policy and the evidence shows that the provisions of the policy were followed in this case. The terms of the policy further permitted the company to deduct any indebtedness so occasioned from the reserve value of the policy in calculating the extended insurance. Does it lie in the mouths of the beneficiaries in this case to complain of a loan, the proceeds of which were applied in keeping alive the policy? The case by the appellants of Webb v. The Missouri State Life Ins. Co., 134 Mo. App. 576, 115 S. W. 481, defeats appellants' contention since it holds that where the policy contained a provision authorizing the deduction of any indebtedness owing by the insured, this provision will be in force although the beneficiary in the policy is the wife and although she in no way joined in the creation of the indebtedness, and in spite of section 7895, Revised Statutes 1899, to the effect that policies of insurance expressed to be for the

benefit of the wife of the insured should inure to her benefit independent of the creditors of the husband.

From these considerations, it necessarily follows that the judgment of the trial court was for the right party and it is hereby affirmed. All concur.