# ROSE STAHEL v. PRUDENTIAL INSURANCE COMPANY OF AMERICA.[1]

July 7, 1933.

Nos. 29,418, 29,419, 29,420, 29,421, 29,422.

*Keller, Broady & Chapin,* for appellant.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *George W. Jansen,* for respondent.

*HILTON, Justice.*

In each of five actions tried to the court without a jury plaintiff appeals from an order denying her motion for a new trial.

[1]Reported in 249 N. W. 713.

Each action was founded on a life insurance policy issued by defendant to and upon the life of Jacob Feinstein, father of plaintiff. The policies were ordinary life, three for $1,000 each, and two for $2,000 each. The following general statement applies to all the policies.

The beneficiary named therein was Feinstein's wife. The policies further provided:

"If there be no beneficiary living at the death of the insured the amount of insurance shall be payable to the executors, administrators or assigns of the insured, unless otherwise provided in the policy. The right to change the beneficiary has been reserved by the insured."

After the policies had been in force for some time and on May 17, 1922, plaintiff was made the beneficiary in all the policies. Many of the premiums were paid by the insured through loans made from defendant, all of them with the knowledge of plaintiff. All the other premium payments were made by plaintiff, without the knowledge of defendant, until March 5, 1929. The policies were at all times in the possession of plaintiff. Mrs. Feinstein died February 15, 1929. On March 5, 1929, at the request of Feinstein, defendant agreed that the insured should not thereafter have the right to change the beneficiary. She thus became an irrevocable beneficiary. On August 19, 1929, Feinstein applied for a loan on all of the policies, executed an assignment of the policies to the defendant, and on August 26, 1929, received the then full loan values therein specified. There was no evidence of bad faith on the part of defendant toward plaintiff either through collusion with insured or otherwise. Plaintiff first learned of the loans here complained of in October, 1929. On November 30, 1929, she made a premium payment on one of the policies. No further premium payments were made by anyone, and the policies were lapsed for nonpayment of premiums at various times from December 13, 1929, to September 24, 1930. Each policy contained the following loan provisions:

"If this policy be continued in force, the insured may borrow from the company, with interest at the rate of six per cent per annum,

payable at the end of each policy year, on the sole security of this policy, an amount up to the limit of the cash surrender value hereinafter specified after deducting therefrom all other indebtedness on account of this policy, by making written application for the loan and assigning the policy to the company as security. Failure to repay any such indebtedness or to pay interest shall not avoid the policy unless the total indebtedness thereon to the company shall equal or exceed the loan value at the time of such failure, nor until one month after notice to that effect shall have been mailed by the company to the last known address of the insured, of the person to whom the loan was made, and of the assignee of record at the home office of the company, if any. The company reserves the right to defer any loan, other than to pay premiums on policies in the company, for a period not exceeding ninety days after application for such loan.

"(Note—At any time during the continuance of this policy a statement of any outstanding indebtedness on account of the policy will be furnished on request.)"

Plaintiff seeks to have the loans made to her father after she became the irrevocable beneficiary canceled as to her and that she receive at her option paid-up policies for lesser amounts or automatic extended insurance without her interest being charged by such loans made to her father; that she be allowed at her option to reinstate the policies without being charged with these loans; and that defendant be enjoined from making any further loans without her consent.

Plaintiff's claim was, and she so testified, that the loans here involved were made by the defendant to her father without her consent. However, the court found that the evidence did not sustain that claim and that the same was untrue. Because of the conclusion we reach, it is not necessary to determine whether this finding was justified by the evidence. In its conclusions of law the court found that the policies had lapsed for nonpayment of premiums and ordered that the actions be dismissed on the merits and that defendant have and recover of plaintiff its costs and disbursements.

Under the general rule, the rights of plaintiff as an irrevocable beneficiary were vested ones. See Bliss, Life Insurance (2 ed.) p. 517, § 318; 35 L.R.A.(N.S.) 844; 14 R. C. L. p. 1376, § 545. In applicable situations Minnesota follows the general rule. Ricker v. Charter Oak L. Ins. Co. 27 Minn. 193, 6 N. W. 771, 33 Am. R. 289; Allis v. Ware, 28 Minn. 166, 9 N. W. 666; Wallace v. Mutual B. L. Ins. Co. 97 Minn. 27, 106 N. W. 84, 85, 3 L.R.A.(N.S.) 478; Birge v. Franklin, 103 Minn. 482, 115 N. W. 278. It is to be noted, however, that in the cases just cited the facts are distinguishable from the cases at bar. In neither of them was there an exercise of an expressed privilege granted to the insured in the policy to borrow money from the insurer. Cases where an assignment of a policy was made as security for money borrowed from a third party, or where the question of a change of beneficiary was involved, or where the policy itself provided that the insured could borrow from the insurer only with the consent of the beneficiary, or where, after insured's death, the controversy was between parties each claiming to be the beneficiary, are of course not helpful. Nor are cases wherein the facts were otherwise materially different from those here.

However, in the cases at bar, as hereinbefore noted, there was an express policy right granted to the insured to borrow money from the company on the security of the policy. Under this right insured applied for the loan; the insurer was obligated under its contract to grant it. The loan provisions of the policies were binding on the insured, the insurer, and plaintiff-beneficiary. See 2 Couch, Cyc. of Ins. Law, § 306; Parker v. Potter, 200 N. C. 348, 157 S. E. 68; Morgan v. Prudential Ins. Co. 209 Ala. 110, 95 So. 355; Leeker v. Prudential Ins. Co. 154 Mo. App. 440, 134 S. W. 676. In Wallace v. Mutual B. L. Ins. Co. 97 Minn. 27, 29, 106 N. W. 84, 3 L.R.A.(N.S.) 478, it is stated:

"As soon as the policy was issued Mrs. Wallace [beneficiary] acquired a vested interest therein, of which she could not be deprived without her consent, except under the terms of the contract with the insurance company."

Plaintiff's rights as beneficiary were subject to the expressed policy right of the insured to borrow of the defendant on the security of the policies in accordance with its terms. Her consent was not necessary in order that the insurer might make the loans to the insured. The loan provisions in the policies are clear and explicit; an interpretation or construction thereof different from the one we arrive at would change the expressed purposes and intent thereof. In Morgan v. Prudential Ins. Co. 209 Ala. 110, 95 So. 355, a policy with a loan provision the same as the ones here involved was considered, and the holding was in accordance with the views hereinbefore expressed.

The suggestion that the policies were not in conformity with the provisions of 1 Mason Minn. St. 1927, § 3402(7), is without force.

Affirmed.