## FARMER v. PRUDENTIAL INS. CO. OF AMERICA.*

### No. 5148.

Court of Appeal of Louisiana. Second Circuit.

April 3, 1936.

H. W. Ayres, of Jonesboro, for appellant.

Laycock & Moyse, of Baton Rouge, for appellee.

DREW, Judge.

Mrs. Dettie A. Farmer, as tutrix of the minors, Mildred A. Farmer and Gussie Spencer Farmer, instituted this suit against the Prudential Insurance Company of America, and since the trial of the case in the lower court, Mildred A. Farmer became of age, presented a petition to the court, and was made a party thereto. She and Mrs. Dettie A. Farmer prosecute this appeal from a judgment rejecting their demands.

On May 16, 1916, the Prudential Insurance Company of America issued policy No. 2176991 on the joint lives of Gussie S. Farmer and Dettie A. Farmer, in which Gussie Spencer and Mildred A. Farmer, minors and children of the insured, were designated as beneficiaries. The policy provided that the right to change the beneficiary has not been reserved to the insured, which provision is contained in the following sentence: "The right to change the beneficiary has not been reserved by the insured." The word "not" is typewritten, while all the rest of the sentence is printed. On the reverse side of the policy an indorsement is stamped prohibiting change of the beneficiary. The premiums on the policy were paid up to and including February 6, 1933, but at that time the existing automatic insurance was sufficient to keep the policy in force and effect for many years thereafter.

On September 1, 1933, one of the insured, Gussie S. Farmer, died. Proof of the death

of Gussie S. Farmer was duly made and payment declined by the insurance company, it contending. that the policy was not in force and effect on September 1, 1933, due to the fact that the insured had borrowed during the early part of 1933, the total loan value of the policy, being approximately the cash surrender value, and that there was not any extended insurance beyond February 6, 1933, or only for a few days thereafter, being due to the fact that the company retained 50 cents on the cash surrender value.

The contention of the plaintiff is that there was no authority in law or under the terms of the policy for a loan to be made to the insured, without the consent of the beneficiary, or for an attempted transaction or agreement to be entered into by the insured and insurer which would have the effect of divesting the rights and interest of the beneficiary in the policy, and that whatever agreement was entered into is illegal, null, and void, in so far as they are concerned, and that the insurer owes them the face value of the policy.

The only question presented for decision in the case is, Did the Prudential Insurance Company of America have the right to make a cash loan to Gussie S. Farmer and Dettie A. Farmer on the policy involved in this suit, without the consent of the beneficiaries?

The documents filed in the record are as follows:

"Jonesboro, La., Jan. 23, 1932.
"Mr. J. E. Lippitt, Mgr., Memphis, Tenn.

"Dear Sir: Replying to your letter of some time ago in reg. to my policies No. 2176591–92–93, will say that I have decided to cash these in. I think I have paid one premium since this letter was passed, and I would thank you to send me the necessary papers to get this settled as soon as possible.

"Thanking you in advance for your prompt attention, I am
"Yours very truly,
"Gussie Sewell Farmer
"Dettie A. Farmer.

"Jan. 26th, 1933.
"Mr. Gussie S. Farmer and Mrs. Dettie A. Farmer, % Jonesboro Lumber Company, Jonesboro, Louisiana.
"Dear Sir and Madam: We acknowledge receipt of your favor of the 23rd inst., advising that you have decided to apply for the cash surrender value of your policies No. 2176591–592–593, and are writing our

Home Office regarding this matter. We will advise you fully as soon as we receive reply from the Company.
"Very truly yours,
"Manager.

"Pols. 2176591–592–593. .
"Farmer
"Jan. 26th, 1933.
"Mr. I. S. Tompkins, Manager,
"Ordinary Surrender Policy Department,
"Dear Sir: Insured desire to surrender their policies for cash values, and our records are not clear as to the beneficiary. Our records indicate that the children of the insured are named beneficiaries, and if the children are not of age, could the beneficiary under each policy be changed to the survivor of the insured. If this change can be made, please furnish us with properly worded amendments for signature of the insured.
"Awaiting your advice, we remain,
"Very truly yours,
"Manager.

"Newark, N. J., Feb. 6, 1933.
"Pol. 2176591—etc.
."Farmer—
"Yours of Jan. 26.

"Mr. J. E. Lippitt, Manager, Memphis, Tenn.
"Dear Sir: The right to change the beneficiary is not reserved under these three policies. In event of surrender, a guardian would have to be appointed in behalf of the minor beneficiary, and the Company would have to be furnished with a certified copy of the guardianship papers or an order from the court authorizing the guardian to apply for the surrender of the policies. This, however, will prove quite expensive and we would suggest that a loan be taken on the policy, which loan would compare favorably with the cash surrender value.
"Yours very truly,
"R. T. Thornley, Assistant Manager.
"Feb. 9, 1933.
"Mr. Gussie S. Farmer and Mrs. Dettie A. Farmer, % Jonesboro Lumber Company, Jonesboro, Louisiana.
"Dear Sir and Madam: Referring to your recent favor advising that you desire to surrender for cash your policies No. 2176591–592–593, we wrote our Home Office, as we could not advise you from our records here as to the completion of the applications for the cash surrender values. We today received letter from the Company, which we quote as follows:

" 'The right to change the beneficiary is not reserved under these three policies. In event of surrender for cash, a guardian would have to be appointed to sign in behalf of the minor beneficiary, and the Company would have to be furnished with a certified copy of the guardianship papers or an order from the court authorizing the guardian to apply for the surrender of the policies. This however, will prove quite expensive and we would suggest that a loan be taken on the policies which loan would compare favorably with the cash surrender value.'

"Of course, if your children named in the policies as beneficiaries are of age the papers in connection with the cash value could be signed by them, but it appears from our records that the children are not of age. However, we will thank you to advise us on this point.

"We are taking the liberty of enclosing herewith certificates for the full loan value of each policy to be completed by you, in event you should decide to follow the Company's suggestion, and each form should be signed by each of you with your full name as they appear in the policies, and the Notary Public acknowledgment on the back of each completed. You will note there are two lines on each form for your signatures. The completed certificates should be returned to this office.

"Awaiting your further favors, we remain

"Very truly yours,
"Assistant Manager.

"Jonesboro, La., Feb. 15, 1933.
"Mr. J. E. Lippitt, Manager, Prudential Insurance Company, Memphis, Tenn.

"Dear Sir: Replying to your letter of the 9th inst., will say that we have had these papers fixed up and would like to have quick action on same on policies No. 2176591–592–593 for the full amount of loan value as to the amount of this I will leave it up to you and the Company as to that amount.

"Thanking you in advance for your prompt attention in this matter, I am

"Yours very truly,
"Gussie S. Farmer.
"Dettie A. Farmer.

"Feb. 17, 1933.
"Mr. and Mrs. G. S. Farmer, % Jonesboro Lbr. Co., Jonesboro, La.

"Dear Sir and Madam: We acknowledge receipt of completed certificates for loans on your policies No. 2176591–2–3, and as soon as these loans are approved by the Company, check will be sent to you.

"Very truly yours,
"Assistant Manager.
"Mar. 2, 1933.

"Mr. Gussie S. Farmer and Mrs. Dettie A. Farmer, Jonesboro, La.

"Dear Sir and Madam: The Company has approved loans of $448.00, $216.00 and $216.00, respectively, on your policies No. 2176591–2–3, and in adjustment of same, we now enclose their check to your order in the sum of $880.00.

"Very truly yours,
"Assistant Manager."

The premium on the policy was paid up to February 6, 1933, at which time another quarterly premium was due, which was never paid. The last letter from defendant to the insured is dated March 2, 1933, only a few days before the expiration of the thirty days of grace, and it is reasonable to presume that the money obtained by the loan was a day or two later reaching the insured. Although the premium was due and the policy about to expire because of failure to pay it, defendant did not do the customary thing and deduct the amount of the premium from the loan. When we take the correspondence in the record, together with the action of defendant, it is most evident that it attempted to do indirectly that which it admits it could not legally do directly. It admits by letter that it could not accept a surrender of the policy for its cash value without the consent of the beneficiaries, yet it loaned to the insured the same amount of money, less 50 cents, at a time when the policy was about to expire for failure to pay the premium, without deducting for the premium, and knowing the intention of the insured to secure the loan and let the policy expire; and this was done at the suggestion of the insurer. Although this fact alone would not be sufficient for a decision of the case, we mention it in passing to show the attitude of the insurer.

█ The policy expressly provides that the beneficiary cannot be changed. The children of the insured were made irrevocable beneficiaries, and under the law of Louisiana, at the very moment of the issuance of the policies, they acquired an irrevocable, vested right and became the owners of the policies and the valuable interest under the policies created by the payment of premiums for their benefit became the prop-

erty of the beneficiaries as the same was made, and could not be disposed of by the insured. Pilcher v. New York Life Insurance Co., 33 La.Ann. 322; Putnam v. New York Life Insurance Company, 42 La.Ann. 739, 7 So. 602; Lambert v. Penn Mutual Life Insurance Company, 50 La.Ann. 1027, 24 So. 16; Bingham v. United States of America, 296 U.S. 211, 56 S.Ct. 180, 80 L.Ed. ——; Fourth National Bank of Montgomery v. Woolfork, 220 Ala. 344, 125 So. 217.

In the case of Central National Bank of Washington City v. Annie G. Hume et al., 128 U.S. 195, 9 S.Ct. 41, 32 L.Ed. 370, the second syllabus in the case correctly relates the finding of the court; it is as follows:

"Where contracts of insurance are made for the benefit of a wife or children, or both, upon their insurable interest in the life of the husband or father, the latter, while they are living, can exercise no power of disposition over the same without their consent; nor has he any interest therein of which he can avail himself; or upon his death have his personal representatives or his creditors any interest in the proceeds of such contracts; but they belong to the beneficiaries, to whom they are payable."

In the Pilcher Case, the court said:

"If, as held in Louisiana, in repeated decisions, the insurance by the husband for the benefit of the wife, is such a valid gratuity in her favor, as to make her right under the policy at his death her absolute and separate estate, the like effect logically attaches pro tanto to the valuable interest under the policy created by the payments of premiums for her benefit, as the same are made; and this interest becomes likewise her separate property not disposable by the husband."

The syllabus in that case correctly states the ruling of the court. It is as follows:

"A policy of insurance taken on the life of the husband in favor of the wife, vests the latter with a right, which the former cannot destroy or control without her consent."

In the Putnam Case, the court said:

"With regard to Mary S. Putnam, beneficiary in the surrendered policy, the facts appear to be as follows, viz.:

"As to her, the company's contract was complete in its incipiency, and never changed thereafter, with her consent. In law, this policy inured to her separate paraphernal benefit, though not separate in property from her husband, the insured; and its

character of paraphernal property could not be changed to that of separate property of the husband or of the community without her consent, lawfully obtained. As such, it could not be placed as security for the husband's debts. To this effect there are many authorities:

"Succession of Kugler, 23 La.Ann. 455; Succession of Hearing, 26 La.Ann. 326; Succession of Clark, 27 La.Ann. 269; Succession of Bofenschen, 29 La.Ann. [711] 714; Pilcher v. N. Y. Life Insurance Company, 33 La.Ann. 322.

"This principle obtains, also, in the state of Connecticut. Vide Lemon v. Life Ins. Co., 38 Conn. 294. Also in New York. Vide Barry v. Brune, 71 N. Y. [261] 262; Barry v. Life Ins. Soc., 59 N. Y. 587; and Dutton v. Willner, 52 N. Y. 312."

The first two syllabuses in the Lambert Case, correctly reflect the ruling of the Court. They are as follows:

"A policy of life insurance taken out by a husband in favor of his wife cannot subsequently be assigned by him to her prejudice. The doctrine announced in the Pilcher Case, 33 La.Ann. 322, and the Putnam Case, 42 La.Ann. 739, 7 So. 602, sustained as the jurisprudence of the state.

"And it makes no difference that he secured from her what purports to be an assignment, without consideration, of the policy to him, before he assigned it to his creditor."

In the body of the opinion, the court said:

"We refer to Pilcher v. Insurance Company, 33 La.Ann. 322, decided in 1881, and Putnam v. Insurance Company, 42 La.Ann. 739, 740, 7 So. 602, decided in 1890.

"In both those cases, while it was not disputed that the taking out of the insurance by the husband on his life in favor of the wife was a gift, a gratuity, a donation to her, his power, right, or authority afterwards to assign or dispose of the policy for his own benefit is denied, and her right and interest in the policy is referred to as her separate property, not disposable by the husband.

"Indeed, strong and emphatic language is used; the court in the first-named case, at page 331 [of 33 La.Ann.], saying:

"'We hold that the right of the beneficiary wife in the policy could only be terminated by its lapse;' and in the later case using this language, quoted from the syllabus:

" 'A life insurance policy, in which a married woman is named as beneficiary, vests a complete title in her as separate, paraphernal property, which cannot be pledged as security for the debts of her husband or of the community.' "

And in the concurring opinion in that case, we find the following:

"In my opinion, the judgment appealed from should be reversed, because it has been settled by repeated decisions of the court that a policy of life insurance which is taken on the life of a husband, payable to his wife as the beneficiary, becomes eo instanti the separate paraphernal property of the wife, under her administration and control, and which cannot be surrendered or assigned by the husband. * * *

"A life insurance policy made payable to wife or wife and children as beneficiary or beneficiaries is the separate property of the beneficiary, and beyond the control of the husband. Pilcher v. N. Y. Life Ins. Co., 33 La.Ann. 322, at bottom of page 324, citing Succession of Kugler, 23 La.Ann. 455; Succession of Hearing, 26 La.Ann. 326; Succession of Clark, 27 La.Ann. 269; Succession of Bofenschen, 29 La.Ann. [711] 714; and at top and in center of page 325 [of 33 La.Ann.]."

In the case of Levy's Estate v. Commissioner of Internal Revenue, 65 F.(2d) 412, 415, the United States Circuit Court of Appeal for the Second Circuit, said:

"Under section 52 of the Domestic Relations Law of New York (Consol.Laws N. Y., c. 14), policies taken out by the wife or the husband, acting for the wife, on the husband's life, cannot be surrendered without the wife's consent. Whitehead v. N. Y. Life Ins. Co., 102 N.Y. 143, 6 N.E. 267, 55 Am.Rep. 787. The courts of New York follow the general rule that a beneficiary, irrevocably designated, obtains rights in a policy which require her consent to a valid surrender of the policy by the insured. See Central Nat. Bank of Washington v. Hume, 128 U.S. 195, 206, 9 S.Ct. 41, 32 L.Ed. 370; In re Simmons & Griffin, 255 F. 521 (C.C.A. 1); Schneider v. U. S. Life Ins. Co., 123 N.Y. 109, 25 N.E. 321, 20 Am.St.Rep. 727; Whitehead v. N. Y. Life Ins. Co., supra. A different result may be reached if the insured has the right to change the beneficiary or originally reserves the right to surrender the policy. Wagner v. Thieriot, 203 App.Div. 757, 197 N.Y.S. 560; Travelers' Ins. Co. v. Healey, 25 App.Div. 53, 49 N.Y.S. 29. The rule which forbids the surrender for cash, in violation of the beneficiary's interest, equally forbids the insured from obtaining a loan without consent of the beneficiary."

Defendant does not seriously contest our finding up to this point, but it contends that the clause wherein the insured expressly renounced the right to change the beneficiary is subject to the later clause in the policy which authorizes him to assign the policy to the insurer and receive a loan equal to the cash surrender value. The policy also contains a clause authorizing the surrender of the policy for its cash value. Defendant admits this last clause cannot be taken advantage of by the insured without the consent of the beneficiary. We can find no good reason why the insured could take advantage of the first clause, that is, the loan clause, without the consent of the beneficiary and be forbidden to take advantage of the other clause, that is, the cash surrender clause, without first obtaining the beneficiary's consent. The loan clause in the policy is as follows:

"If this policy be continued in force, the insured may borrow from the Company, with interest at the rate of six per cent per annum, payable at the end of each policy year, on the sole security of this policy, an amount up to the limit of the cash surrender value hereinafter specified after deducting therefrom all other indebtedness on account of this policy, by making written application for the loan and assigning the policy to the Company as security. Failure to repay any such indebtedness or to pay the interest shall not avoid the policy unless the total indebtedness thereon to the Company shall equal or exceed the loan value at the time of such failure, nor until one month after notice to that effect shall have been mailed by the Company to the last known address of each of the insured, of the person or persons to whom the loan was made, and of the assignee of record at the Home Office of the Company, if any. The Company reserves the right to defer any loan, other than to pay premiums on policies in the Company, for a period not exceeding 90 days after application for such loan."

The cash surrender clause is as follows:

"If this policy be legally surrendered to the Company within three months after the end of the third year from its date or of any year thereafter, and if all premiums required by the terms of the policy, to the end of that year have been paid in full,

the Company will pay therefor the sum indicated by the following table, less any indebtedness to the Company on account of this policy. The Company reserves the right to defer the payment of any cash surrender value for a period not exceeding 90 days after application for such cash surrender value."

Defendant contends that the use of the word "legal" in the cash surrender clause presupposes that there might be some legal reason why this clause could not be taken advantage of, and, since the word "legal" is not used in the loan clause, that the right to a loan is absolute and there can be no legal reason why the clause cannot be taken advantage of. We fail to see the distinction. In order to secure a loan, there must be a legal assignment of the policy, although the word "legal" is not used, and in order to secure the cash surrender value of the policy, there must be a legal surrender of the policy whether the word "legal" has been used or not. We are therefore unable to attach the same significance to the use of the word "legal" in the cash surrender clause that is given it by the learned counsel.

Defendant, to support its contention that the clause renouncing the right to change beneficiaries is subject to the loan clause, relies upon the following cases: Mallon v. Prudential Ins. Co. of America (D.C.) 5 F.Supp. 290; Caplin v. Penn Mutual Life Ins. Co., 182 App.Div. 269, 169 N.Y.S. 756, 760; Leeker v. Prudential Ins. Co., 154 Mo. App. 440, 134 S.W. 676; Id., 163 Mo.App. 523, 143 S.W. 1197; Morgan v. Prudential Ins. Co., 209 Ala. 110, 95 So. 355; Schuberth v. Prudential Ins. Co., 86 Pa.Super. 80; Stahel v. Prudential Ins. Co., 189 Minn. 405, 249 N.W. 713, 715.

In the Caplin Case, the dissenting opinion is more in line with our jurisprudence on the subject than is the opinion of the majority of the court. It is as follows:

"Borrowing on one's life insurance, arising from business necessities, was not authorized in this state until 1892. Insurance Law (Consol.Laws, c. 28) § 16. Defendant's policy has a printed clause, providing for such advance on 'proper assignment of the policy.' Obviously such a special clause should be read and construed with the other policy provisions. What is a proper assignment of this policy? Suppose the beneficiary named were a creditor for whom the insurance was taken out. Could the borrowing insured nevertheless incumber that policy to the extent of the premium reserve? Such a right to policy loans must, in fairness to the beneficiary and to the company, depend on the status of the insured and upon the extent of the authority and title left in his hands to pledge through a valid assignment.

"The familiar principle is that the interest of a named beneficiary, which the insured cannot revoke or change, is vested, so that the person procuring the insurance has no power to transfer or encumber that interest. Washington Cent. Nat. Bank v. Hume, 128 U.S. 195, 206, 9 S.Ct. 41, 32 L. Ed. 370; Tyler v. Treasurer & Receiver General, 226 Mass. 306, 309, 115 N.E. 300, L.R.A.1917D, 633. Such a printed option to borrow is obviously attached to the regular policy form, whether it be life or endowment insurance, and for the frequent case where the loss is payable to one's personal representatives. Can we infer that such an option, on a proper assignment, was meant to overturn and annul the security provided for these infant beneficiaries?

"Where the policy expressly gives such borrowing power to the 'holder' of the policy (Travelers' Ins. Company v. Healey, 25 App.Div. 53, 49 N.Y.S. 29), the instability of the fund is apparent, so that the beneficiaries are left to look merely to the residue which the holder's loans have not exhausted. A like power would pass by the clause reserving the right to change the beneficiary without the latter's consent. Mutual Ben. Life Ins. Co. v. Swett, 222 F. 200, 137 C.C.A. 640, Ann.Cas.1917B, 298. But, without some wording indicating an unusual right reserved in the insured, his continued premiums work for the benefit of the beneficiary. The insured may let the policy lapse, or otherwise remain passive; but he cannot affirmatively prejudice the trust thereby created, either by its surrender or by the less destructive effect of policy loans. To do this, an express clause is required. For instance:

" 'It is understood, that in the event of the surrender of this policy, the beneficiary hereunder shall have no claim whatever upon said company.' Hilliard v. Wisconsin Life Ins. Co., 137 Wis. 208, 214, 117 N.W. 999, 1001.

"Or where the contract to pay to the named beneficiaries had this parenthetical clause, 'with power to the insured to surrender this policy to said company at any time,' the insured had a full right to surrender, which right he could assign. Blinn v. Dame, 207 Mass. 159, 93 N.E. 601, 20

Ann.Cas. 1184. But, without some express provision making the insured's privilege paramount to the security of the beneficiary, his surrender cannot prejudice the vested rights of the beneficiary. Whitehead v. N. Y. Life Ins. Co., 102 N.Y. 143, 6 N.E. 267, 55 Am.Rep. 787; Haskell v. Avery, 181 Mass. 106, 63 N.E. 15, 92 Am.St.Rep. 401; Burke v. Prudential Ins. Co. of America, 221 Mass. 253, 108 N.E. 1069, Ann.Cas. 1917E, 641; Timayenis v. Union Mutual L. Ins. Co. (C.C.) 21 F. 223; People v. Globe Mutual Life Ins. Co., 15 Abb.N.C. 75, 96 N.Y. 675. A late author says of the vested right of such a beneficiary:

" 'This rule applies to a policy to which there are attached the incidents of loan value, cash surrender value, and automatic extension by premiums paid, so that, when sufficient premiums have been paid to produce extended insurance beyond the time of the death of the insured, the surrender by him of the policy for its surrender value did not impair the rights of the wife beneficiary in the policy.' Bacon, Life & Accident Insurance, § 377 (1917).

"There are the further considerations that the power to revoke a trust (which is the effect of sustaining the plaintiff's demand for loans) should not be left to uncertain implication. This provision for such loans must mean loans only to those having full right to incumber the fund, and not to the creator of a vested security for dependent infants. In making such policy loans, defendant should have the protection of the unquestioned title of the assignors. By a reversal, with a decree requiring these loans, the court would give its sanction to a pro tanto revocation of these trusts, and would, I submit, depart from what has hitherto been the essential basis for the stability of such insurance."

The first-cited case was a decision by the United States District Court, and we fail to find that it was ever appealed. There is no doubt that it bears out defendant's contention, as do the other cases relied upon, but it is not shown that any of the states in which the cases arose has gone as far as our courts have, in the cases heretofore cited, in defining the rights and interests of an irrevocable beneficiary.

The word "not" in the clause "the right to change the beneficiary has not been reserved by the insured," is typewritten and the remainder of the policy reserving to the insured certain rights is printed. It indicates clearly that the policy was printed for both types of insurance, that is, where the right to change the beneficiary was reserved and where it was not. When the word "not" was put in the policy with a typewriter, the other printed portions of the policy were subordinated to that which was typed in it, for the reason that the typed part of the policy was more likely to be the true expression and intent of the parties. This being true, this printed clause authorizing the insured to borrow on the policy, became meaningless. If the right to change beneficiaries had been reserved, this clause would be in effect. To hold otherwise would be, under the jurisprudence of this state, to hold that the clause renouncing the right to change beneficiaries was without any effect. The two clauses are conflicting and one nullifies the other; therefore, the one most favorable to the beneficiary will be held to be the intent of the parties to the contract, for the reason that the policy was prepared entirely by the insurer and must be interpreted strictly against it, and most liberally in favor of the insured and his beneficiaries.

Under the decisions heretofore cited, the value of the policy at the time it was assigned by the insured for the loan was the property of the beneficiaries, and the insured was prohibited by law to assign it, pledge it, or use it to secure his debt in any manner. He had no control over the policy. When he assigned it to the insurer to secure the loan he received, he violated this prohibition fixed by law and the assignment was without legal effect, null, and void.

It is admitted that if the assignment and loan are held to be invalid, there was sufficient reserve held by the insurer to pay the premiums and keep the policy in effect until long after the death of the insured.

It therefore follows that the insurance was in effect at the time of the death of the father of plaintiffs and that the insurance company, defendant herein, is indebted unto them for the amount of the face value of the policy. The judgment of the lower court is reversed and there is now judgment in favor of Mildred A. Farmer and Mrs. Dettie A. Farmer, tutrix of the minor, Gussie Spencer Farmer, and against the Prudential Insurance Company of America in the full sum of $1,000, with interest at the rate of 6 per cent. per annum from September 1, 1933, until paid (Act No. 17 of 1920); and for all costs.